UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


BANKUNITED, N.A.                                                   PLAINTIFF

V.                             CIVIL ACTION NO.  3:19-CV-341-KHJ-FKB

D&D ENVIORNMENTAL, INC. d/b/a
CROCKER & ASSOCAITES, INC.;
TESTING SERVICES, INC.; MAXX
HOLDINGS, INC.; HIGHLAND HOLDINGS,
INC.; and SPENDER DANIELS                        DEFENDANTS

ORDER

Before the Court is Plaintiff BankUnited, N.A.'s ("BankUnited") Motion for Summary Judgment [113]. For the following reasons, the Court grants the motion in part and denies the motion in part.

I.     Facts and Procedural History

This case arises from a series of loan disputes. These facts are largely undisputed. In March 2011, Defendants Marc and Sandra Daniels purchased Defendant D&D Environmental, Inc. d/b/a Crocker & Associates, Inc. ("C&A"). Pl.'s Memo in Support of Mot. for Summ. J. [114] ¶ 4. To fund the purchase, First Chatman Bank ("FCB") loaned C&A a certain amount under two loan transactions. Jackie Garuz Aff. [113-1] ¶ 5. In connection with the loans, C&A executed two promissory notes. *Id.* ¶¶ 6, 7. And as partial security for repayment of the notes, Defendants Marc, Sandra, and Testing Services, Inc. signed unconditional guarantee agreements. *Id.* ¶ 8. But C&A lost several important contracts and

employees within eighteen months of the purchase and subsequently defaulted on its payment obligations under the loans and ceased operations. [114] ¶ 5; [113-1] ¶ 11.

In May 2014, FCB assigned the loans to CertusBank, N.A. Pl.'s Second Amend. Compl. [53] ¶ 17. In August 2014, CertusBank, at C&A's request, allowed C&A to use some of its remaining accounts receivable to purchase two FedEx Ground Package routes and several vehicles for $825,000. [113-1] ¶¶ 9, 11; Asset Purchase Agreement [113-3]. One route was in Columbus, Mississippi, and the other was in Tupelo, Mississippi. [113-3]. CertusBank agreed to assist C&A in resuming monthly loan payments from revenues generated by the routes. [113-1] ¶ 11. The parties disagree about whether the purchase and sale of the FedEx routes closed. *Compare* [114] ¶ 11; *see* Assignment and Bill of Sale [113-4]; Closing Statement [113-5]; Assignment of FedEx Independent Service Provider Agreement [113-6] *with* Def.'s Memo in Support of Resp. [117] ¶ 11.

During this time, Defendants C&A, Marc, Sandra, Testing Services, Maxx Holdings, Inc., and CertusBank entered into a loan modification agreement. [113-1] ¶ 10. Marc owns Maxx Holdings. *See* Marc Daniels' Depo. [113-19] at 4.[1] Pursuant to the loan modification agreement, Maxx Holdings was added as an unlimited and unconditional guarantor of the loans, Maxx Holdings' liens on all business assets were added as collateral to the loans, and the remaining loans' terms were extended and re-amortized. [113-1] ¶ 10, 13, 14. Also, as part of the loan modification

---

[1] The Court cites the pages on CM/ECF.

agreement, Maxx Holdings executed a commercial security agreement, which granted CertusBank a security interest in certain FedEx delivery trucks, among other things. [113-1] ¶ 14. CertusBank then perfected its security interest in the FedEx trucks by having its first-priority lien documented on the certificates of titles for each truck and by filing a UCC financing statement. *Id.* ¶ 15.

Subsequently, in May 2015, CertusBank assigned the loans and promissory notes to BankUnited. *Id.* ¶ 16. Two years later, in April 2017, BankUnited sent default notices to C&A, Marc, Sandra, Testing Services, and Maxx Holdings, notifying them of their payment default under the notes and threatening suit if the default was not cured within seven days. *Id.* ¶ 25.

Then in November 2018, BankUnited claims that Marc and Maxx Holdings, as sellers, transferred their FedEx routes to Defendants Spencer and Highland Holdings, Inc., as buyers, for $10,000. [114] ¶ 17; *see* Asset Purchase Agreement [113-8]; Assignment of Independent Service Provider Agreement [113-11]. Spencer is the sole owner of Highland Holdings. *See* Spencer Daniels' Depo. [113-18] at 5. Additionally, BankUnited asserts Spencer and Highland Holdings assumed all truck leases and leased trucks secured by payables to third parties from Maxx Holdings. [114] ¶ 17. But Spencer and Highland Holdings, the only Defendants who responded to the Motion for Summary Judgment,[2] claim that Maxx Holdings, not

---

[2] Defendants C&A, Testing Services, Maxx Holdings, Marc, and Sandra have not responded to BankUnited's Motion for Summary Judgment [113]. Responses were due by January 31, 2022. The time to respond has passed.

Marc, was the seller, and Highland Holdings, not Spencer, was the buyer. [117] ¶ 17.

The same day of the transfer, BankUnited claims both Marc and Spencer sent letters to FedEx, verifying the sale in writing and notifying FedEx that Marc was an officer of Highland Holdings, and he would handle Highland Holding's financials, manage its banking relationships, and work with its fleet administration. [114] ¶ 18; Marc Daniel's Letter to FedEx [113-9]; Spencer Daniel's Letter to FedEx [113-10]. But Spencer and Highland Holdings deny that Marc or Spencer sent the letters in their individual capacity, but rather they sent the letters as corporate representatives of Maxx Holdings and Highland Holdings, respectively. [117] ¶ 18.

In April 2019, two years after BankUnited sent the first default notice, it sent another to C&A, Marc, Sandra, Testing Services, and Maxx Holdings, advising that because of their continued payment default under the notes, BankUnited had terminated the loans and declared the entire balance of the loans plus interest immediately due. [113-1] ¶ 26. A month later, BankUnited filed its first Complaint against C&A, Marc, Sandra, Testing Services, and Maxx Holdings. Pl.'s Compl. [1]. C&A did not answer the Complaint, so the clerk entered default against it. *See* Entry of Default [20].

After that, Marc and Sandra filed for Chapter 11 bankruptcy in a separate suit from this matter. [114] ¶ 23. BankUnited cites to relevant testimony from Marc and Sandra's examination during the bankruptcy proceeding, including that Sandra

4

gifted 100% of Highland Holdings' stock to Spencer; Highland Holdings had no assets when Sandra gifted the stock to Spencer; Marc "sold the opportunity to operate the routes" to Spencer and Highland Holdings; consideration exchanged for the routes was $10,000; Maxx Holdings' only assets were the FedEx routes and trucks at the time of transfer; Highland Holdings pays Marc $8,000 a month as a consulting fee; and Marc's duties as an officer for Highland Holdings are much like the duties he performs for Maxx Holdings. Marc and Sandra's Bankruptcy Exam. [113-13] at 3–5, 7.

Spencer and Highland Holdings argue that along with paying $10,000, Highland Holdings assumed Maxx Holdings' leases and the costly obligation to operate the routes as consideration for the transfer; Highland Holdings no longer pays Marc $8,000 a month as a consulting fee because it does not have the FedEx routes anymore; and Maxx Holdings had other assets at the time of the transfer other than the FedEx trucks, which were not transferred to Highland Holdings. [116-4] at 1–2; [117] at 6; Periodic Report of Entities Debtor Owns [113-14] at 13–14.

BankUnited did not discover Maxx Holdings transferred the FedEx routes until after Marc and Sandra's bankruptcy proceeding examination. [113-1] ¶ 30. Based on this, BankUnited amended its Complaint, adding Spencer and Highland Holdings as Defendants and including a fraudulent transfer claim. Pl.'s Amend. Compl. [25]. BankUnited then filed a Second Amended Complaint, adding a replevin claim. Pl.'s Second Amend. Compl. [53]. Ultimately, the Second Amended

Complaint seeks a money judgment against C&A, Testing Services, Maxx Holdings, Marc, and Sandra for the principal amount owed under the promissory notes, asserts fraudulent transfer claims under both Mississippi's Uniform Fraudulent Transfer Act and common law, and asserts a replevin claim to recover possession of certain Maxx Holdings' trucks. *Id.* at 6–13. Defendants, not including C&A, answered and Spencer counterclaimed, asserting that he has a mechanic's lien on the FedEx trucks. Answer and Counterclaim [60].

Throughout discovery, Maxx Holdings and Testing Services admitted they are in default of their payment obligations to BankUnited. *See* Maxx Holdings' Resp. to Requests for Admiss. [113-15] at 3; Testing Services' Resp. to Requests for Admiss. [113-16] at 3. BankUnited also designated an expert, who produced a report detailing that, at the time of the transfer, Maxx Holdings' going-concern value[3] was $535,000, and the FedEx routes themselves were worth $722,438, which was half of Maxx Holdings' total assets. James A. Koerber Expert Report [113-2] at 5. Spencer and Highland Holdings, however, assert that the expert report overstates Maxx Holdings' going-concern value and the value of the FedEx routes because it did not consider Maxx Holdings' significant cash decline, negative events at the time, and Marc's health issues when calculating such values. [117] ¶ 35.

---

[3] A going-concern value is an intangible, non-amortizable capital asset often considered to be part of the goodwill of a company. *See VGS v. Comm'r of Internal Revenue*, 68 T.C. 563, 591 (1977).

As of December 14, 2021, the total amount due on the loans is $2,124,039.72, plus attorneys' fees, costs, and expenses. [113-1] ¶ 27. The outstanding balance continues to accrue interest daily at a 6.5% per annum rate. *Id.* ¶ 28.

BankUnited now moves for summary judgment, seeking judgment against C&A, Testing Services, and Maxx Holdings, jointly and severally, for the amounts owed under the two loans, totaling $2,939,300; judgment against Spencer and Highland Holdings for the value of the assets fraudulently transferred; and judgment for BankUnited on its replevin action and granting it immediate possession of the FedEx trucks securing the loans. [113] at 1.

II.   Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated

7

assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson,* 477 U.S. at 249), but only determines whether there is a genuine issue for trial when viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III. Analysis

BankUnited moves for summary judgment, seeking judgment against C&A, Testing Services, and Maxx Holdings, jointly and severally, for the amounts owed under the two loans in the principal amount of $2,939,300; judgment against Spencer and Highland Holdings for the value of the assets fraudulently transferred to them by Marc and Maxx Holdings; and judgment granting BankUnited immediate possession of the FedEx trucks securing the loans. [113] at 1.

A. Breach of Contract

BankUnited first seeks summary judgment against C&A, Testing Services, and Maxx Holdings for all sums due under the promissory notes because they breached the loan documents by failing to pay the outstanding balances on the loans. [114] at 9.

In Mississippi, a "breach-of-contract case has two elements: (1) the existence of a valid and binding contract; and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss.*, LLC, 250 So. 3d 402, 415 (Miss.

2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012) (internal quotations omitted)). "A breach is material where there is 'a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats [the purpose of the contract].'" *Ferrara v. Walters*, 919 So. 2d 876, 886 (Miss. 2005) (citation omitted).

As to C&A, BankUnited argues it is entitled to judgment by default. [114] at 9; *see* [20]. BankUnited also contends that it has proven each element of its breach of contract claim against Testing Services and Maxx Holdings. [114] at 9. First, Testing Services and Maxx Holdings admit there is a valid and existing contract based on the guarantees executed by them in connection with the loans. [113-15] at 1; [113-16] at 1. Second, Testing Services and Maxx Holdings admit they are in default of their payment obligations to BankUnited under the loan documents. [113-15] at 3; [113-16] at 3. Lastly, BankUnited urges it has been monetarily damaged by Testing Services and Maxx Holdings' breach in the amount of $2,124,039.72, plus attorneys' fees, costs, and expenses, and per diem interest at the rate of 6.5% per annum. [114] at 9–10.

C&A, Testing Services, and Maxx Holdings neither joined Spencer and Highland Holdings' response nor filed a separate response. And the time to respond has passed. When a nonmoving party does not respond, the Court may treat the facts the moving party has raised as "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). But the Court cannot grant a motion for summary judgment "simply because there

9

is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995).

Here, the Court finds that BankUnited has met its burden of showing that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Neither C&A, Testing Services, nor Maxx Holdings have submitted any evidence to show that there is a fact dispute. And based on the record before the Court, no reasonable jury could find for these Defendants. BankUnited is entitled to summary judgment against C&A, Testing Services, and Maxx Holdings.

B. Fraudulent Transfer

Next, BankUnited seeks a money judgment against Spencer and Highland Holdings for the value of the assets fraudulently transferred to them by Marc and Maxx Holdings. [113] at 1.

Mississippi's Uniform Fraudulent Transfer Act ("UFTA") governs complaints to set aside fraudulent conveyances as to creditors. Miss. Code Ann. §§ 15-3-101 *et seq.* Under UFTA, "[a] transfer. . .by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made. . ., if the debtor made the transfer. . .with actual intent to hinder, delay or defraud any creditor or debtor." *Id.* § 15-3-107(1).

To determine whether the transfer was made with actual intent to hinder, delay, or defraud, courts generally consider eleven "badges of fraud." *See id.* § 15-3-107(2). While this list is not exhaustive, consideration may be given, among other factors, to whether:

10

> (a) The transfer. . .was to an insider;
> (b) The debtor retained possession or control of the property transferred after the transfer;
> (c) The transfer. . .was disclosed or concealed;
> (d) Before the transfer was made. . ., the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred. . .;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made. . .;
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; [and]
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor. . .

*Id.* "No specific combination of badges is necessary for a finding of actual intent and the presence of any badges of fraud does not compel such finding." *RDS Est., LLC v. Abrams Grp. Constr.*, LLC, No. 1:15-cv-361-LG-RHW, 2017 WL 278479, at *4 (S.D. Miss. Jan. 20, 2017) (quoting *In re Vista Bella, Inc.*, 511 B.R. 163, 194 (Bankr. S.D. Ala. 2014)).

Alternatively, a "strong presumption of fraud[,] which can be rebutted only by clear and convincing evidence[,]" arises "if there exists a combination of facts such as described in subsections (2)(l), (m), or (n) only." Miss. Code Ann. § 15-3-107(3).[4] Subsections 2(l), (m), and (n) provides:

> (l) The debtor made the transfer. . .without receiving equivalent value in exchange for the transfer. . ., and the debtor:

---

[4] BankUnited describes this as constructive fraud, however, Mississippi's UFTA provides no substantive distinction between actual fraud or constructive fraud. [114] at 10, 13–14; see Miss. Code Ann. § 15-3-107(2). Rather, a "strong presumption" arises when there is a combination of facts described in subsections (l), (m), or (n). *Id.* § 15-3-107(3).

11

> (i) was engaged or was about to engage in business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due;
>
> (m) A transfer made. . .by a debtor may be fraudulent to a creditor whose claim arose before the transfer was made. . .if the debtor made the transfer. . .without receiving a reasonably equivalent value in exchange for the transfer. . .and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer. . . ; and
>
> (n) A transfer made by a debtor may be fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider has reasonable cause to believe the debtor was insolvent.

*Id.*

    i. Actual Fraud

Some badges of fraud are present. First, the transfer was to an insider. Spencer is an insider because he is "[a] relative of a general partner, director, officer, or person in control of the debtor." *Id.* § 15-3-101(g)(ii)(6). Spencer is Marc's son, and Marc is the owner of Maxx Holdings. [113-119] at 4. Second, the transfer was made after Maxx Holdings was threatened with suit. In April 2017, BankUnited sent default notices to C&A, Marc, Sandra, Testing Services, and Maxx Holdings, notifying them of their payment default under the notes and threatening suit if the default was not cured within seven days. [113-1] ¶ 25. And in November 2018, the transfer occurred. [113-8]; [113-11]. Third, BankUnited was unaware of the transfer until Marc and Sandra's bankruptcy proceeding, a year after the transfer occurred. [113-1] ¶ 30.

But there is conflicting evidence on the remaining badges of fraud, including whether: Maxx Holdings retained possession or control of the property after transfer, the transfer was of substantially all Maxx Holdings' assets, the transfer was gratuitous, the consideration received by Maxx Holdings was reasonably equivalent to the value of the asset transferred, Maxx Holdings was insolvent or became insolvent shortly after the transfer was made, and the transfer impaired BankUnited's ability to collect the debt. And although some badges are present, the evidence shows that the reason for the sale was because of Marc's declining health and Spencer's youth and ability to "hop on a truck," and not for any bad intent. [116-10] at 2. For these reasons, the Court declines to find that a fraudulent transfer is shown as a matter of law. *See In re Vista Bella*, 511 B.R. at 194–95 (presence of some badges of fraud does not manage a finding of actional intent); *Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-cv-3806-B, 2014 WL 7272596, at *2 (N.D. Tex. 2014) (presence of some badges of fraud was "not so overwhelming as to rule out the possibility that a reasonable juror could find that [a debtor] lacked the intent to defraud[, especially' where there was] evidence that tend[ed] to support or alternative explanation for" the transfer at issue). Thus, the Court finds a genuine dispute of material fact exists as to whether the transfer was made with actual intent to hinder, delay, or defraud.

### ii. Presumptive Fraud

BankUnited alternatively argues that the transfer was presumptively fraudulent, even if no actual fraud were present. [114] at 13. Again, if a combination

13

of facts exists as described in subsections (2)(l), (m), or (n) only, then "there will be a strong presumption of fraud which can be rebutted only by clear and convincing evidence." Miss. Code Ann. § 15-3-107(3). BankUnited emphasizes that the transfer was presumptively fraudulent under subsection (m), where:

> [a] transfer made. . .by a debtor may be fraudulent to a creditor whose claim arose before the transfer was made. . .if the debtor made the transfer. . .without receiving a reasonably equivalent value in exchange for the transfer. . .and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer.

*Id.* § 15-3-107(2)(m).

The parties mainly dispute whether Maxx Holdings received a reasonably equivalent value in exchange for the transfer of the FedEx routes. BankUnited argues that Maxx Holdings did not receive a reasonably equivalent value because it only received the "arbitrary price of $10,000" for the transfer, which was less than Maxx Holdings' going-concern value at the time. [114] at 13–14. But Spencer and Highland Holdings counter that the routes cost less when compared to Highland Holdings' overhead expenses, assumption of leases, and purchase of more trucks and scanners. [117] at 14.

The Court finds that BankUnited has not met its burden of showing that no genuine dispute of material fact exists as to whether Maxx Holdings received reasonably equivalent value for the transfer of FedEx routes. A reasonable jury could find that Maxx Holdings received a reasonably equivalent value for the transfer given that Highland Holdings paid Maxx Holdings $10,000 for the routes, as well as assumed the leases from Maxx Holdings and the obligation to operate the

14

routes, including purchasing trucks and scanners. This issue is also a question of fact, and "frequently not suitable for resolution through summary judgment." *RDS*, 2017 WL 278479, at *4 (quoting *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003)); *see also Hoffman*, 2014 WL 7272596, at *12; *Matter of Zedda*, 103 F.3d 1195, 1206 (5th Cir. 1997) ("Whether a transfer is made for a reasonably equivalent value is, in every case, largely a question of fact."). Accordingly, the Court finds that BankUnited has not shown there is no genuine dispute of material fact as to whether the transfer was presumptively fraudulent, and its motion is denied.

C.  Replevin

Lastly, BankUnited seeks judgment granting it immediate possession of the FedEx trucks securing the loans from Spencer. [113] at 1, 16.

An action for replevin is a possessory action for specific property and is governed by statute. *See* Miss. Code Ann. §§ 11-37-101–11-37-157. Mississippi's replevin statute gives plaintiffs two options when commencing suit: (1) seek immediate possession of the property under Mississippi Code Annotated § 11-37-101, or (2) wait until the Court determines the plaintiff's right to possess the property under Mississippi Code Annotated § 11-37-131. *Lacoste v. Sys. & Servs. Technologies, Inc.*, 126 So. 3d 111, 115.

Under the second option, a plaintiff must "file a declaration under oath setting forth the[ ] matters shown in subparagraphs (a) through (e) Section 11-37-101. . . ." *Regions Com. Equip. Fin. LLC v. Performance Aviation, LLC*, No. 2:16-cv-

110, 2017 WL 354275, at *4 (S.D. Miss. Jan. 24, 2017) (quoting Miss. Code Ann. § 11-37-131)). These matters include:

> (a) A description of any personal property
> (b) The value thereof, giving the value of each separate article and the value of the total of all articles;
> (c) The plaintiff is entitled to the immediate possession thereof, setting forth all facts and circumstances upon which the plaintiff relies for his claim, and exhibiting all contracts and documents evidencing his claim;
> (d) That the property is in the possession of the defendant; and
> (e) That the defendant wrongfully took and detains or wrongfully detains the same

Miss. Code Ann. § 11-37-101(a)–(e). Then, instead of a writ of replevin, the Court issues a summons, directing the defendant "to appear for a final hearing to determine the rights of the parties as to possession." *Lacoste*, 126 So. 3d at 115 (quoting Miss. Code Ann. § 11-37-131)).

BankUnited appears to seek replevin under the second option. *See* [53] ¶ 60. And its Second Amended Complaint sets forth the requirements enumerated in Mississippi Code Annotated § 11-37-131(a)–(e). *See* [53] ¶¶ 51–60. The Court will set a final hearing to determine the rights of the parties as to possession. *See* Miss. Code Ann. § 11-37-131. The Court further declines to rule on BankUnited's Motion for Summary Judgment as to its replevin claim because a hearing is required before the Court can enter a judgment. *See id.*

IV.   Conclusion

The Court has considered all arguments. Those the Court does not address would not have changed the outcome. For the reasons stated, the Court GRANTS BankUnited's Motion for Summary Judgment [113] as to its breach of contract

16

claim and DENIES its motion [113] as to its fraudulent transfer claim. The Court further declines to rule on BankUnited's replevin claim until a final hearing is held.

SO ORDERED AND ADJUDGED this the 28th day of March, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
